UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-CV-134

MODERN ICE EQUIPMENT AND )
SUPPLY CO., )
 )
        Plaintiff, )
 )
v. )
 ) **AMENDED ORDER**
SNOW PARK USA, LLC, CHAD J. )
BELTER, and SNOWPARK USA )
CORPORATION. )
 )
        Defendants )
 )

**THIS MATTER** is before the Court on Plaintiff's Motion for Partial Summary Judgment [D.I. 26] with Memorandum in Support [D.I. 27], Defendant's Memorandum in Opposition [D.I. 28], and Plaintiff's Reply to Defendants' Memorandum in Opposition [D.I. 31]. For the reasons stated below, the Plaintiff's Motion is **DENIED**.

**I. Factual Background**

This is a case between Modern Ice Equipment and Supply Company ("Plaintiff") and Snow Park USA, LLC, Chad Belter and SnowPark USA Corporation (collectively "Defendants"). Plaintiff filed a Complaint with this Court on March 19, 2010 and a Motion for Partial Summary Judgment on November 29, 2010. [D.I. 27]. Defendants filed counterclaims on December 16, 2010. Plaintiff claims Defendant Snow Park breached its contract (the "Purchase Order") regarding the rental and ultimate purchase of a used industrial icemaker ("the Equipment"). Complaint at 5-6, Modern Ice Equipment and Supply Co. Vo Snow Park USA, LLC, et al., No. 3:10-cv-134 (W.D.N.C. Mar. 19, 2010), ECF No. 1 [hereinafter "Complaint"].

1

Plaintiff also alleges Defendant Chad Belter breached his personal guarantee of obligations under the Purchase Order. Id. at 5-6. Finally, Plaintiff argues Defendants were unjustly enriched when they used the Equipment for over a month without paying in full. Id. at 5-6. Defendant Snow Park counters that Plaintiff actually breached the contract when it provided Equipment that was "materially defective," and that Defendants negligently misrepresented the capabilities of the Equipment. Answer and Counterclaims of Snow Park USA, LLC and SnowPark USA Corporation, Modern Ice Equipment and Supply Co. Vo Snow Park USA, LLC, et al., No. 3:10-cv-134 (W.D.N.C. Apr. 15, 2010), ECF No. 5 [hereinafter "Answer"]; see also Answer and Counterclaims of Snow Park USA, LLC and Chad J. Belter, Modern Ice Equipment and Supply Co. Vo Snow Park USA, LLC, et al., No. 3:10-cv-134 (W.D.N.C. Oct. 8, 2010), ECF No. 21 [hereinafter "Belter Answer"].

Defendants planned to create a "snow park" at Symphony Park at SouthPark Mall in Charlotte, North Carolina, that would provide "snowboarding, sledding, snow tubing, and a play area with snow." Complaint at 3. Based on these plans, Defendants worked with Plaintiff to select an icemaker that would produce the type of ice necessary to create the park within Defendants' price range. Plaintiff's Memorandum at 3-4. Following months of negotiations with Plaintiff, Snow Park signed a written contract to purchase a used industrial icemaker on October 19, 2010, and Modern Ice subsequently signed the contract on October 29, 2010. Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 1, 5, Modern Ice Equipment and Supply Co. v. Snow Park USA, LLC et al., No. 3:10-cv-134 (W.D.N.C. Dec. 16, 2010), ECF No. 27 [hereinafter "Plaintiff's Memorandum"]. A quote that included the AS-IS provisions and Terms and Conditions regarding the Equipment was drafted on October 20, 2010. Plaintiff's Memorandum at 6. The agreement signed by the parties established Snow Park

would rent the equipment from Modern Ice for a monthly payment of $30,000, which would go towards the eventual purchase price of $275,000. Complaint at 3. Chad Belter also signed a personal guarantee to ensure Snow Park's obligations to Modern Ice up to the $275,000 price. Id. at 4.

Plaintiff delivered the Equipment to the location at SouthPark Mall in November 2009 and set it up according to the specifications in the Purchase Order. Id. at 4. It is undisputed that the Equipment was installed according to the contract. Unbeknownst to Plaintiff, however, Snow Park was also in the process of a voluntary dissolution at the same time. Id. at 4. Snow Park USA, LLC then became SnowPark USA Corporation. Id.

During this time, Defendants missed their first payment of $30,000 to Plaintiff, which was due on December 10, 2009. Id. at 4. When Plaintiff still had not received the payment by December 30, 2009, it sent a representative, who received a $4,000 check from Burgess. Id. at 4. On January 8, 2010, however, the check was returned due to insufficient funds. Id. at 4-5. Throughout this time, Defendants also had difficulty making payments to SouthPark Mall. Plaintiff's Memorandum at 7. When SouthPark notified Defendants that their lease was being terminated and they must vacate the SouthPark premises by January 15, 2010, Plaintiff removed the Equipment from the property. Id. Plaintiff did not receive any further payment from Defendant. Id.

## II. Summary Judgment Standard

"Under the Federal Rules of Civil Procedure, summary judgment shall be awarded 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Bouchat v. Baltimore Ravens Football Club,

3

Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact exists if a reasonable jury, considering the evidence, could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Co. v. Catrett, 477 U.S. 317, 325 (1986).  If this showing is made, the burden then shifts to the non-moving party.  Bouchat, 346 F.3d at 519.  A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [her] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).

## III. Analysis

### A. Validity of the Contract

In North Carolina, "a valid contract exists when there is an agreement based on a meeting of the minds and sufficient consideration."  Elina Adoption Servs., Inc. v. Carolina Adoption Servs., Inc., No. 1:07CV169, 2008 WL 4005738, at *3 (M.D.N.C. Aug. 25, 2008) (citing Creech ex rel. Creech v. Melnik, 556 S.E.2d 587, 591 (N.C. Ct. App. 2001)).  Based on the record before the Court, there is clearly a valid contract between the parties.  Defendants attempt to argue that the "As-Is" provision of the contract is not a valid part of the contract and that they would not have agreed to it had they known it was part of the final Purchase Order.  Defendants' Memorandum at 2.  Defendant Belter stated "he would not have signed the As-Is document, had it been presented to him."  Id. at 2 (citing Belter Dep. at 198:1-14).  Though Belter claims he would not have signed the As-Is agreement, the record demonstrates that he saw the documents on multiple occasions and either knew about them, or should have known about them.  *See* Reply

4

Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment at 2, Modern Ice Equipment and Supply Co. v. Snow Park USA, LLC et al., 3:10-cv-134 (W.D.N.C. Dec. 27, 2010), ECF No. 31 [hereinafter "Plaintiff's Reply"] (stating "Plaintiff was clear throughout the negotiations that the Equipment would only be sold on an "As-Is" basis with no warranties, and attached the "As-Is" document and Terms and Conditions document to the various quotes provided"). Though the Purchase Order did not physically include it, the Quote and the As-Is provisions and Terms and Conditions attached to it were explicitly referenced within the Purchase Order. Plaintiff's Exhibit 27. The As-Is Provision and Terms and Conditions are part of the valid contract.

The As-Is Provision and Terms and Conditions are valid under North Carolina law. Under N.C. GEN. STAT. ANN. § 25-2-316, a party wishing to exclude or modify an implied warranty must do so in writing, and in "conspicuous" language. § 25-2-316 (West 2010). Further, "all implied warranties are excluded by expressions like "as is," "with all faults," or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty ..." Id. Because the language in the Purchase Order explicitly says "as is" and "with all faults," and because Defendants saw the language in the draft orders on multiple occasions, the As-Is terms in the contract were valid under § 25-2-316. Defendants' argument that such documents were not part of the final contract because the Purchase Order did not physically include them is uncompelling.

### B. Express Warranty and Associated Claims

Defendants argue that even if the As-Is language and Terms and Conditions are considered part of the contract, that the express representation in the Purchase Order that the machine will make "approximately 64 tons of ¼ inch ice per 24 hours" is an express warranty

5

excluded from the As-Is language of the contract. The Court agrees. The Terms and Conditions state "[s]eller makes no warranty of any kind, whatsoever, expressed or implied, unless specifically stated herein, and there are no warranties of merchantability and/or fitness for a particular purpose." Plaintiff's Exhibit 30 at 3. The Purchase Order clearly states that the machine will produce a certain capacity of a certain type of ice.

Neither Plaintiff nor Defendants have produced evidence of whether the icemaker was capable of making approximately "64 tons of ¼ inch ice per 24 hours." At most, Plaintiff has shown that the icemaker was producing forty-five tons of ½ in. ice per twenty-four hours. D.I. 31, Ex. 2, Brasher Deposition Excerpts, 40:17-24. Even acknowledging that production varies by the thickness of the ice produced, the Court declines to hold that, as a matter of law, forty-five tons of ½ in. ice is equivalent to sixty-four tons of ¼ in. ice based on the available evidence. Because Plaintiff's breach of contract and breach of personal guarantee claims hinge on the capabilities of the "TIG" 64-ton icemaker Modern Ice delivered to Snowpark USA, Plaintiff's Motion for summary judgment is denied on these claims.

### D. Unjust Enrichment

"[T]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." CDC-LCGH, LLC v. Mayor, No. 08-1332, 2009 WL 497395, at *3 (4th Cir. Feb. 26, 2009) (per curiam) (quoting County Comm'rs v. J. Roland Dashiell & Sons, Inc., 358 Md. 83, 96 (4th Cir. 2000). Here, because the Court has found the existence of a valid contract, Plaintiff's claim for unjust enrichment is precluded as a matter of law.

6

**E. Belter's Counterclaims**

A party that is not in privity to a contract lacks standing to bring an action for breach of the contract. See Brewer v. Nat'l Indem. Co., 363 F.3d 333, 337 (4th Cir. 2004). Signing a personal guarantee does not create a sufficient interest in a contract for the guarantor to bring a breach of contract claim under the contract. Cf. Beasley v. Arcapita Inc., No. 09–1125, 2011 WL 2489950, at *2 (4th Cir. 2011) (noting that a signing a guarantee does not create rights under the contract which are necessary to bring a § 1983 suit). Chad Belter was not personally party to the contract between Modern Ice and Snowpark USA. Doc. No. 1, Ex. 1, Contract, at 1. Nor was he a direct beneficiary of the contract. Id. Instead, he merely provided a personal guarantee for the debts Snow Park USA incurred under the contract. Doc. No. 1, Ex. 2, Guarantee, at 2. This guarantee does not give him standing to bring counterclaims in the present action. However, breach of contract and negligent misrepresentation are defenses that Mr. Belter against Modern Ice's breach of contract claims; as he is responsible for personally satisfying any payments which Snowpark USA owes and has failed to pay Modern Ice, up to $275,000. Id.

**F. Consequential Damages**

The contract precludes recovery of consequential damages and thus Defendant, at most, can recover the difference between the industrial icemaker it received and the icemaker for which it contracted. In a breach of contract action, the injured party is only entitled to the compensation necessary to provide them the benefits which would have been conferred by performance of the contract. First Union Nat'l Bank v. Naylor, 102 N.C.App. 719, 725, 404 S.E.2d 161, 164 (N.C. Ct. App. 1991). Although consequential damages are generally available, parties may contractual disclaim liability for consequential damages. N.C.GEN. STAT. ANN. §

25-2-715 (West 2010); see Moore v. Coachmen Indus., Inc., 129 N.C.App. 389, 402, 499 S.E.2d 772, 780 (N.C. Ct. App. 1998). Direct damages are determined by the market value of the performance the breaching party failed to provide. New Valley Corp. v. U.S., 72 Fed. Cl. 411, 414 (2006). Consequential damages, by contrast, are not based on the value of the performance but on value the performance may produce, such as future profits. Id. at n. 2; see also Hadley v. Baxendale, [1854] 9 Ex, 341, 356–357, 1854 WL 7208 (appeal taken from Eng.).

Here, only direct damages are available because the contract contains an explicit disclaimer of liability for consequential and incidental damages. Doc. No. 30, Ex. 30, Quote, at 3. Although Defendant claims that they suffered over $1 million in damages because of Plaintiff's alleged breach of contract, Defendant only reaches this number by including lost profits and lost future profits. Doc. No. 5, Answer with Counterclaims, at ¶ 50–66. These are consequential and incidental damages. As in New Valley, the only damages Defendant would be entitled to recover on its counterclaim would be the difference between the value of the icemaker they contracted for and the icemaker that Modern Ice provided. The maximum value of this claim, therefore, is $275,000, if the icemaker provided was absolutely worthless.

**IV.    Conclusion**

Plaintiff has failed to show that no genuine issue of material fact exists regarding Defendant's breach of contract and Defendant Belter's breach of his personal guarantee because it is unclear if the icemaker in question was capable of producing close to sixty-four tons of ¼ in. ice in a twenty-four hour period. Defendant Belter's counterclaims and Defendant SnowPark USA Corp.'s claims for consequential damages are barred for the foregoing reasons. The other findings of law in this Order as to the validity of the contract, the as-is language, the express

warranty and unjust enrichment are binding upon the Parties for the reasons set forth above.

Summary judgment as to the actual claims is denied.

    **SO ORDERED**.

Signed: August 11, 2011

Graham C. Mullen
United States District Judge